### In the Matter of W.A.B.

#### No. 14–97–00871–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 29, 1998.

---

William B. Connolly, Jo Nelson, Houston, for appellants.

Patricia Lee Flenniken, Lisa S. Rice, Moira Rankin, Houston, for appellee.

Before CANNON, DRAUGHN and HILL, JJ.*

## OPINION

JOE L. DRAUGHN, Justice (Assigned).

This is an action to terminate the parent-child relationship between the mother, Rebecca Delvecceo, and her minor child, W.A.B. When W.A.B was born, both he and his mother tested positive for cocaine. Since his birth, his mother tested positive for cocaine twice, was convicted of drug possession and prostitution, and, at the time of trial, was serving a one-year sentence for possession of drug paraphernalia. The lower court found by clear and convincing evidence that the termination of the parent-child relationship was in the best interest of the child, and further found that the mother engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child.[1]

On appeal, Delvecceo asserts the trial court erred when it terminated the parent-child relationship because: (1) the termi-

---

* Senior Justices Bill Cannon, Joe L. Draughn, and John Hill sitting by assignment.

1. The father of the child, Mark Barrow, was notified by publication of the termination proceedings and failed to respond. The court terminated his parental rights, and he has not appealed.

nation order did not require the showing of any causal connection between Delvecceo's behavior and any actual endangerment to her child; and (2) the evidence was both factually and legally insufficient. We overrule both points of error and affirm the judgment of the trial court.

## STATEMENT OF FACTS

W.A.B. was born June 28, 1994. At birth, he tested positive for cocaine, as did his mother who admitted ingesting cocaine while pregnant. The hospital notified the Texas Department of Protective and Regulatory Services ("TDPRS") which was granted, after petitioning the court, temporary managing conservatorship with Delvecceo as possessory conservator. Delvecceo was also ordered to reside with W.A.B. at The Shoulder, an in-patient drug rehabilitation facility. Delvecceo left the treatment facility on July 30, 1994 without notifying the court or TDPRS. Delvecceo pled guilty to prostitution on August 25, 1994 and was sentenced to forty-five days incarceration. TDPRS took custody of W.A.B. and, at the time of trial, the child resided with his aunt and uncle. TDPRS filed this suit after repeated attempts to reunite the mother with W.A.B. were unsuccessful.

## SUFFICIENCY OF THE EVIDENCE

■ In the interest of efficiency, we will begin our analysis with Delvecceo's second and third points of error. In her second and third points of error, Delvecceo challenges the legal and factual sufficiency of the evidence. Evidence supporting the finding that parental rights should be terminated must be clear and convincing. *See In the Interest of G.M.,* 596 S.W.2d 846, 847 (Tex.1980). The clear and convincing standard is an intermediate standard of proof, falling somewhere between the preponderance standard used in ordinary civil proceedings and the reasonable doubt standard used in criminal proceedings. *See id.* This standard is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State*

*v. Addington,* 588 S.W.2d 569, 570 (Tex.1979) (per curiam).

■ When both legal and factual insufficiency challenges are raised on appeal, we must first examine the legal sufficiency of the evidence. *See Glover v. Texas Gen. Indem. Co.,* 619 S.W.2d 400, 401 (Tex.1981) (per curiam). In reviewing a challenge to the legal sufficiency of the evidence, we consider only the evidence and inferences tending to support the trial court's findings and disregard all evidence and inferences to the contrary. *See Weirich v. Weirich,* 833 S.W.2d 942, 945 (Tex.1992). In reviewing the factual sufficiency of the evidence, we must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam). "The clear and convincing standard of proof required to terminate parental rights does not alter the appropriate standard for appellate review." *D.O. v. Texas Dep't of Human Servs.,* 851 S.W.2d 351, 353 (Tex.App.—Austin 1993, no writ).

■ A mother's use of drugs during the pregnancy is conduct which endangers the physical and emotional well-being of the child. *See Dupree v. Texas Dep't of Protective and Regulatory Servs.,* 907 S.W.2d 81, 84 (Tex.App.—Dallas 1995, no writ). At trial, Delvecceo admitted to being a drug addict, ingesting cocaine during her pregnancy, and twice testing positive for cocaine after the birth of her son. Therefore, evidence of Delvecceo's drug use during and after pregnancy may be conduct which endangers the physical or emotional well-being of W.A.B. and also constitutes grounds for termination. *See id.; see also In the Interest of Guillory,* 618 S.W.2d 948, 950–51 (Tex.App.—Houston [1st Dist.] 1981, no writ) (evidence that mother who birthed child while on probation for heroin possession, continued to use drugs after birth, and subsequently convicted and imprisoned for aggravated robbery sufficient to support finding that mother's conduct endangered child).

■ Further, Devecceo also admitted to being arrested and imprisoned before and

after the birth of her son for possession of drugs, prostitution, possession of drug paraphernalia, and various other offenses. While mere imprisonment will not, standing alone, constitute conduct endangering the physical or emotional well-being of the child, it may contribute to a finding that the parent engaged in a course of conduct which endangered a child's physical or emotional well-being. *See Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533–534 (Tex.1987). Therefore, evidence of Delvecceo's frequent arrests and incarceration may also constitute grounds for termination. *See id.; see also In the Interest of E.S.M.*, 550 S.W.2d 749 (Tex. App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.) (evidence of mother's drug abuse, prostitution, and frequent incarceration sufficient to support finding that mother's conduct endangered child). Although Delvecceo testified to her current successful drug rehabilitation program, this program is a prison-sponsored program and there are no assurances, nor can there be, that once Delvecceo is released she will be a sober and responsible mother to her child.

The record demonstrates Delvecceo engaged in a course of conduct that endangered the physical and emotional well being of her child. *See Harris v. Herbers*, 838 S.W.2d 938, 942 (Tex.App.—Houston [1st Dist.] 1992, no writ). Her criminal history, imprisonment, and illegal drug use during and after her pregnancy constitute a basis for termination of her parental rights under the Family Code. *See* TEX. FAM.CODE ANN. § 161.001(1)(E) (Vernon Supp.1998). Thus the trial court's finding that Delvecceo's conduct constituted grounds for termination of her parental rights is supported by the evidence.[2] Moreover, after weighing the evidence found in the record before us, we conclude the trial court's finding is not so contrary to the overwhelming weight of the evidence as to be manifestly wrong or unjust.[3]

Accordingly, we overrule appellant's second and third points of error.

## CAUSAL CONNECTION

In Delvecceo's first point of error, she challenges the trial court's judgment on the basis that the termination was not supported by a causal connection between Delvecceo's behavior and any actual endangerment or harm to W.A.B. Delvecceo's argument rests on two assumptions. First, Delvecceo assumes the child was not harmed by her ingestion of cocaine during, and after her pregnancy; therefore, that behavior should not serve as the basis for the termination of her parental rights. Second, Delvecceo assumes that Texas courts' interpretation of section 161.001(1)(E) to not require actual damage to the child resulting from the parent's conduct is unconstitutional.

We are not required to speculate as to the harm suffered by a fetus when its mother ingests cocaine during her pregnancy. The Texas Supreme Court has interpreted "endanger" to mean "to expose to loss or injury; to jeopardize." *See Boyd*, 727 S.W.2d at 533. Although, endanger means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or cause actual physical injury to the child before it constitutes a danger to the child's well-being. *See In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996). Finally, the use of drugs during the pregnancy may be conduct which endangers

---

2. Delvecceo does not challenge the "best interest" portion of the trial court's judgment. Therefore, that determination is not before the Court.

3. We overrule Delvecceo's motion to strike record references by TDPRS to documents filed with the trial court that allegedly contain hearsay. The appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record. *See* TEX.R.APP. P. 34.1. The reporter's record of the trial contains numerous references, by Delvecceo and TDPRS, to the documents contained in the clerk's record. Delvecceo testified without objection about her aliases, conduct, and convictions. The caseworker testified without objection about W.A.B.'s file, hearings, reunification plans, and the contents of the reports she and other caseworkers filed. These in court references to documents contained in the clerk's record were not objected to on any ground. Therefore, the documents contained in the clerk's record are part of the appellate record, and both parties may refer to them on appeal.

the physical and emotional well-being of the child. *See Dupree*, 907 S.W.2d at 84.

Further, the record demonstrates the trial court based its decision not only on Delvecceo's ingestion of drugs during her pregnancy, but also on her conduct after the birth of W.A.B. Janet Banks, the clinical coordinator at the LBJ Hospital nursery, stated "drug abusing mothers have been known to neglect their children in pursuit of their drug habit. This infant is at risk for neglect, abuse, developmental delays and poor weight gain besides [sic] lack of attention and appropriate maternal-infant bonding." Delvecceo's conduct supported that assessment when she tested positive for cocaine twice after the birth of W.A.B., and within one month after she left The Shoulder with her child, in violation of a court order, she was arrested and convicted for prostitution and sentenced to 45 days incarceration. The record does not disclose where W.A.B. was on August 18, 1994 when his mother was arrested for prostitution and subsequently incarcerated. At the very least, Delvecceo exposed her child to the risk of neglect, if not actual neglect, through her criminal conduct and incarceration. Therefore, we disagree with Delvecceo's first assumption and affirm the trial court's finding that Delvecceo's conduct constituted grounds for termination of her parental rights.

▮ As to Delvecceo's second assumption, we agree that her parental rights are of constitutional magnitude. *See In the Interest of S.H.A.*, 728 S.W.2d 73, 91 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). We also agree that the state must show a compelling interest when petitioning to terminate the parent-child relationship. *See id.* The Family Code codified this compelling interest standard by requiring the state to show by "clear and convincing" evidence that the parent has violated one of the statutory grounds for termination. *See Richardson v. Green*, 677 S.W.2d 497, 500 (Tex.1984).[4]

Delvecceo is not the first parent to argue that endangerment must be established as an independent proposition and cannot be inferred from evidence of parental misconduct alone. *See Boyd v. Texas Dep't of Human Services*, 715 S.W.2d 711, 715 (Tex.App.—Austin 1986), *rev'd, Texas Dep't of Human Services v. Boyd*, 727 S.W.2d 531 (Tex.1987). The court of appeals held that parental misconduct is insufficient, but the Texas Supreme Court disagreed. "We decline to adopt the interpretation placed on section [161.001(1)(E)] by the court of appeals and expressly disapprove both its definition of "danger" and its holding that danger cannot be inferred from parental misconduct." *Id* at 533. Therefore, we agree with Delvecceo that the supreme court interprets section 161.001(1)(E) to not require a causal connection between the parent's misconduct and any actual harm to the child resulting from that misconduct. *See id.*

▮ However, we will not rule on the constitutionality of Texas courts' interpretation for two reasons. First, Delvecceo raises this constitutional challenge for the first time on appeal. A constitutional challenge not raised properly in the trial court is waived on appeal. *See Johnson v. Lynaugh*, 800 S.W.2d 936, 939 (Tex.App.—Houston [14th Dist.] 1990, writ denied). Neither Delvecceo's answer nor motion for new trial raises a constitutional challenge to this interpretation of section 161.001(1)(E). Therefore, Delvecceo has waived this issue on appeal. Second, on the facts of this case, we see nothing that would make it an exception to the Texas Supreme Court's interpretation of section 161.001(1)(E) by which we as an intermediate appellate court are bound.[5]

---

4. Delvecceo claims that reversal is required by *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1981). There, the Supreme Court held the United States Constitution requires at least a "clear and convincing evidence" standard of proof to require a fair balance between the rights of the natural parents and a state's legitimate concerns. *Id.* at 769–70, 102 S.Ct. 1388. The Texas statute requires "clear and convincing evidence." Tex Fam Code

Ann. § 161.001 (Vernon Supp.1998). *Santosky,* therefore, is inapplicable.

5. In her brief and during oral argument Delvecceo relied heavily on *Ybarra v. Texas Dep't of Human Services*, 869 S.W.2d 574 (Tex.App.—Corpus Christi 1993, no writ ). Ybarra is distinguishable from this case. Factually, Ybarra was a mildly retarded mother who left her children alone in a dirty house while she worked at night.

The record overwhelmingly supports the trial court's judgment that Delvecceo's conduct endangered her child and that termination is in his best interest. Accordingly, we overrule Delvecceo's first point of error and affirm the judgment of the trial court.

Ybarra showed her willingness to work on her drinking problem by attending Alcoholics Anonymous meetings and taking advantage of other aid offered by the Texas Department of Human Services. Also, Ybarra's children were taken from her on the basis of section 15.02(1)(D) (now 161.001(1)(D)), not section 161.001(1)(E) as is the case here. The *Ybarra* court held section 161.001(1)(D) requires the court to look to the specific *conditions or surroundings* and determine whether they endanger the child. *See id* at 577. Accordingly, the court reversed the termination order because of a lack of evidence of endangering surroundings. We agree with this assessment. However, section 161.001(1)(E) requires the parent's *conduct* to be scrutinized. Accordingly, we affirm this termination order because there is sufficient evidence that Delvecceo's conduct endangered W.A.B. Because it is readily distinguishable, the *Ybarra* decision is of no aid in our analysis of this case.