COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| WALTER HOLCOMBE, SHARON HOLCOMBE, YVONNA JOHNSON, SCOTT JOHNSON, AND LYLA BETH COLLIER, | § | No. 08-08-00321-CV |
| | § | Appeal from the |
| Appellants, | § | 143rd District Court |
| v. | § | of Reeves County, Texas |
| REEVES COUNTY APPRAISAL DISTRICT, | § | (TC# 07-08-18885-CVR) |
| | § | |
| Appellee. | | |

**O P I N I O N**

Appellants, Walter Holcombe, Sharon Holcombe, Scott Johnson, Yvonna Johnson, and Lyla

Beth Collier, appeal the trial court's verdict in favor of Reeves County Appraisal District (RCAD),

following their suit protesting increased property values.  We affirm.

**BACKGROUND**

Complaining of RCAD's decision to increase their property values by 30 percent for ad

valorem tax purposes in the 2007 and 2008 tax years, Appellants filed suit contending the increases

were arbitrary and capricious, and without just cause.  RCAD denied the allegations and moved for

a no-evidence summary judgment, claiming Appellants failed to produce any experts or other

competent evidence concerning the market value of its properties for the tax years at issue.

Appellants responded that expert testimony was not required to establish market value, but they

nonetheless designated themselves as experts to testify as to the market value of their properties.

The trial court did not rule on the motion, and thus, the case proceeded to a bench trial.

At trial, Carol Markham, the Chief Appraiser for RCAD for the past 27 years, testified that

the real estate market was booming in 2007 and 2008. Although she tried to keep the appraised property values low for tax purposes, the market kept rising and the Comptroller told her to raise the values or the county would lose school funding. Accordingly, despite any increases for 2006, for 2007, Markham gathered comparable sales for the past three years in determining each property's value and raised all property values by 30 percent, except those in the "very poor areas."[1] Unfortunately, the increases were not sufficient to retain school funding.

Turning to Appellants' properties, Markham assessed the value of each property by gathering three years of comparable sales based on age, class, and depreciation. For the 2007 and 2008 tax years, Markham determined that Scott and Yvonna Johnson's property value was at least $90,320, that Lyla Collier's properties were valued at $41,790 and $27,590, and that Walter and Sharon Holcombe's property value was $96,140. Appellants disputed the property values, testifying, without any reference to specific sales of other similar homes, that they could not sell their houses for the appraised values. However, Valera Gatewood, a veteran real-estate broker, disagreed and testified that each property was appraised below market value, presenting evidence of several comparable homes that sold for much more than what Markham valued Appellants' properties at.

The trial court rendered final judgment for RCAD. On Appellants' request, the trial court issued findings of fact and conclusions of law. The trial court found that the property values were at least the values assessed by RCAD on January 1, 2007, and January 1, 2008, and concluded that Appellants failed to present legally sufficient evidence to show their properties were appraised unequally under Section 42.26 of the Texas Tax Code. In passing, the court noted that market value "is the price at which a property would transfer for cash or its equivalent under prevailing market

---

[1] There were no sales for the lower-income housing areas and those areas were barely liveable.

conditions if exposed for sale in the open market with a reasonable time for the seller to find a purchaser; both the seller and the purchaser know of all the uses for which it is capable of being used and of the enforceable restrictions on its use; and both the seller and the purchaser seek to maximize their gains and neither is in a position to take advantage of the exigencies of the other."

## ANALYSIS

Appellants' first issue alleges that RCAD's increased assessments were discriminately imposed on certain classes of property to the exclusion of others, and their second issue contends that the increases were unlawful when they, being over 65 years of age, froze their school taxes. Finding Appellants' former assertion was never made to the trial court and that Appellants' second complaint is inadequately briefed, we do not reach the merits of either argument but rather overrule them on procedural grounds.

## DISCRIMINATION

In their first issue, Appellants assert that they are entitled to relief based on a "discriminatory assessment," arguing that RCAD cannot "lawfully discriminate in favor of one group of property owners and against another group." Appellants note that the Chief Appraiser only increased valuations as to certain classes of property – Class C to AAA – while the "'poorer' houses were not increased in value." Thus, Appellants conclude that the "increase in a class of properties while refusing to reassess other classes of properties is clearly discriminatory and . . . void."

*Applicable Facts*

During the trial, Appellants' focused on four arguments: (1) whether RCAD's reason for increasing property values was valid; (2) whether RCAD considered comparable sales in assessing property values; (3) whether their properties were worth the values RCAD assessed;

3

and (4) whether RCAD could increase property values, and ergo, their taxes, despite filed exemptions claiming they were over 65 and had frozen their school taxes. Indeed, Appellants' questioning concerned RCAD's reason for increasing the value of their properties, that is, that the State Comptroller threatened loss of school funding if property values stayed the same, complaining that was not a valid basis for increasing their property values. Appellants also focused on RCAD's alleged improper assessment of their property values by increasing the same before considering any comparables. Additionally, Appellants' testimonies challenged the assessed values of their properties, noting the dilapidated conditions of their homes and their inability to sell their homes for the values assessed. And finally, Appellants questioned the homestead cap, that is, whether RCAD could raise property values by 30 percent when the law only allows homesteads to be raised by 10 percent each year, and whether RCAD could increase their market values for county and city tax purposes when they filed exemptions to freeze their school taxes.

In response, RCAD presented evidence that the assessed values of Appellants' properties were still below market value. The closing arguments then focused on RCAD's ability to increase the value of their homes by 30 percent for the applicable tax years when they not only believed that RCAD's basis for doing so, i.e., the loss of school funding, was inadequate, but also that their homes could not be sold for as much, and RCAD's failure to consider other properties comparable to their own before implementing the increase. Appellants also asserted that their values should never have been raised since they were over 65 and froze their school taxes. Recognizing that the comparable market values of Appellants' properties were the issues, the trial court found that the market values of each of the complained-of properties were at least the

4

values assessed by RCAD, concluding that Appellants failed to present sufficient evidence to show that their properties were appraised unequally.

*Applicable Law*

The Texas Constitution requires taxation to be equal and uniform. *See* TEX. CONST. art. VIII, § 1(a). Here, however, the trial court based its decision on Section 42.26 of the Tax Code, not Article VIII, Section 1(a) of the Texas Constitution. That statutory provisions provides:

(a) The district court shall grant relief on the ground that a property is appraised unequally if:

(1) the appraisal ratio of the property exceeds by at least 10 percent the median level of appraisal of a reasonable and representative sample of other properties in the appraisal district;

(2) the appraisal ratio of the property exceeds by at least 10 percent the median level of appraisal of a sample of properties in the appraisal district consisting of a reasonable number of other properties similarly situated to, or of the same general kind or character as, the property subject to the appeal; or

(3) the appraised value of the property exceeds the median appraised value of a reasonable number of comparable properties appropriately adjusted.

(b) If a property owner is entitled to relief under Subsection (a)(1), the court shall order the property's appraised value changed to the value as calculated on the basis of the median level of appraisal according to Subsection (a)(1). If a property owner is entitled to relief under Subsection (a)(2), the court shall order the property's appraised value changed to the value calculated on the basis of the median level of appraisal according to Subsection (a)(2). If a property owner is entitled to relief under Subsection (a)(3), the court shall order the property's appraised value changed to the value calculated on the basis of the median appraised value according to Subsection (a)(3). If a property owner is entitled to relief under more than one subdivision of Subsection (a), the court shall order the property's appraised value changed to the value that results in the lowest appraised value. The court shall determine each applicable median level of appraisal or median appraised value according to law, and is not required to adopt the median level of appraisal or median appraised value proposed by a party to the appeal. The court may not limit or deny relief to the property owner entitled to relief under a subdivision of Subsection (a) because the appraised value

5

determined according to another subdivision of Subsection (a) results in a higher appraised value.

(c) For purposes of establishing the median level of appraisal under Subsection (a)(1), the median level of appraisal in the appraisal district as determined by the comptroller under Section 5.10 is admissible as evidence of the median level of appraisal of a reasonable and representative sample of properties in the appraisal district for the year of the comptroller's determination, subject to the Texas Rules of Evidence and the Texas Rules of Civil Procedure.

(d) For purposes of this section, the value of the property subject to the suit and the value of a comparable property or sample property that is used for comparison must be the market value determined by the appraisal district when the property is a residence homestead subject to the limitation on appraised value imposed by Section 23.23.

TEX. TAX CODE ANN. § 42.26 (Vernon 2008). Section 42.26 does not appear to expressly contemplate a remedy for property class discriminations. *See id*. at § 42.26(a). Although a broad and liberal reading of subsection (a)(1) may support such a cause of action, we need not address this matter as we find that Appellants' discrimination complaint was never presented to the trial court.

It is well settled that a party will not be permitted to take a position on appeal that is not presented in the trial court. *Mandell v. Hamman Oil & Refining Co.*, 822 S.W.2d 153, 162-63 (Tex. App.–Houston [1st Dist.] 1991, writ denied), *abrogated by Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1 (Tex. 2008); *McDuffie v. Blassingame*, 883 S.W.2d 329, 335 (Tex. App.–Amarillo 1994, writ denied). Indeed, an issue not expressly presented to the trial court cannot be considered on appeal as grounds for reversal. *Millhouse v. Wiesenthal*, 757 S.W.2d 103, 107 (Tex. App.–Houston [1st Dist.] 1988), *aff'd*, 775 S.W.2d 626 (Tex. 1989). Even constitutional issues must be properly raised in the trial court or they are waived on appeal. *See In the Matter of W.A.B.*, 979 S.W.2d 804, 808 (Tex. App.–Houston [14th Dist.] 1998, pet.

6

denied), *disapproved of on other grounds by In re J.F.C.*, 96 S.W.3d 256, 267 n.39 (Tex. 2002); *Segovia v. Texas Dep't of Protective and Regulatory Servs.*, 979 S.W.2d 785, 788 (Tex. App.–Houston [14th Dist.] 1998, pet. denied).

*Application*

We have carefully reviewed the record and have been unable to locate any argument based on property class discrimination that was presented to the trial court. Although Markham fleetingly testified that property values were increased only for certain classes, Appellants never complained to the trial court that her testimony supported a property class discrimination complaint. Rather, Appellants focused on RCAD's reason for increasing their property values, i.e., the loss of school funding, and whether their property values could be increased despite their filed exemptions. Assuming RCAD's reason for increasing the values was valid, it is clear that Appellants' issues before the trial court became whether their properties were worth the values assessed by RCAD, which would at most fall under subsection (a)(2) or (a)(3) of Section 42.26, not subsection (a)(1) or Article VIII, Section 1(a) of the Texas Constitution. *Compare* TEX. TAX CODE ANN. § 42.26(a)(2), (a)(3) (providing that appraisals should be based on comparable properties or "other properties similarly situated to, or of the same general kind or character as, the property subject to the appeal"); *with* TEX. CONST. art. VIII, § 1(a) (requiring taxation to be equal and uniform); TEX. TAX CODE ANN. § 42.26(a)(1) (providing that "the appraisal ratio of the property [should not] exceed[] by at least 10 percent the median level of appraisal of a reasonable and representative sample of other properties in the appraisal district"). Even the trial court recognized the issue as one of market value, not class discrimination, and Appellants never complained that the trial court failed to consider the class discrimination issue. Simply, the

7

discriminatory class argument now raised on appeal was never asserted to the trial court below.

Because Appellants never expressly presented their discriminatory class complaint to the trial court, we find Appellants failed to preserve the issue for our review. *See In re M.J.M.L.*, 31 S.W.3d 347, 353 (Tex. App.–San Antonio 2000, pet. denied) (noting error not preserved where issue on appeal was different from one urged at trial)*; Alamo Fireworks, Inc. v. Truckload Fireworks, Inc.*, No. 08-01-00229-CV, 2002 WL 313191, at *7 (Tex. App.–El Paso Feb. 28, 2002, no pet.) (op., not designated for publication) (noting error not preserved where trial argument was very different from one complained of on appeal). Accordingly, Appellants' first issue is overruled.

**EXEMPTION**

We now turn to Appellants' second issue, which contends that because they were over 65 years of age, the increase in value, and thus, the increase in taxes, violated the Constitution and the Tax Code. Again, we need not reach the merits of this issue.

*Applicable Law*

Rule 38 of the Texas Rules of Appellate Procedure requires a party's brief to contain a "succinct, clear, and accurate statement of the arguments made in the body of the brief" and a "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(h), (i). Briefing that is wholly conclusory and provides no substantive analysis, discussion, or legal authority to support the contentions raised fails to preserve any issue for review. *See Velasquez v. Waste Connections, Inc.*, 169 S.W.3d 432, 439 (Tex. App.–El Paso 2005, no pet.); *Robert L. Crill, Inc. v. Bond*, 76 S.W.3d 411, 425 (Tex. App.–Dallas 2001, pet. denied).

*Application*

Here, Appellant's entire argument for Issue Two is contained in one paragraph (or four conclusory sentences) and cites no authority other than a general cite to Article VIII, Section 1 of the Texas Constitution and Section 11.26 of the Texas Tax Code. Although they state the trial court erred by "completely ignor[ing]" these provisions, that the tax increase violated these provisions, and that the "same [was] proven to the trial judge," Appellants wholly fail to explain or analyze these constitutional and statutory provisions, state how the provisions were violated, show what evidence proved the same to the trial court, or provide any analogous cases supporting their position. In light of these inadequacies, we hold Appellants inadequately briefed the issue, preserving nothing for our review. *See Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284 (Tex. 1994) (appellate court has discretion to waive points of error which are inadequately briefed); *see also, e.g., Thompson v. Harco Nat. Ins. Co.*, 120 S.W.3d 511, 516 (Tex. App.–Dallas 2003, pet. denied) (holding issue inadequately briefed when appellant's argument, made up of two sentences and a cite to a federal statute, provided no substantive legal analysis or argument with supporting case law), *cert. denied*, 543 U.S. 876, 125 S.Ct. 100, 160 L.Ed.2d 127 (2004); *Meachum v. Comm'n for Lawyer Discipline*, 36 S.W.3d 612, 616 (Tex. App.–Dallas 2000, pet. denied) (holding issue inadequately briefed when appellant's argument consisted of three sentences, two record cites, and a single citation to a disciplinary rule; there was no substantive analysis, discussion, or legal authorities supporting his contention); *Bradt v. West*, 892 S.W.2d 56, 68-69 (Tex. App.–Houston [1st Dist.] 1994, writ denied) (holding issue inadequately briefed when appellants provided some authority but failed to discuss relevant facts and only made fleeting, conclusory statements); *Eaves v. Unifund CCR Partners*, 301 S.W.3d

402, 409 (Tex. App.–El Paso 2009, no pet.) (holding issue inadequately briefed when argument consisted of only three conclusory sentences); *In re C.L.*, No. 04-03-00638-CV, 2004 WL 86136, at *3 (Tex. App.–San Antonio Jan. 21, 2004, no pet.) (mem. op.) (holding issue inadequately briefed when brief only contained four sentences on the issue complained of and failed to offer any substantive analysis or substantive discussion of the evidence in support of the contention raised).  Accordingly, Issue Two is overruled.

## CONCLUSION

Having overruled Appellants' issues, we affirm the trial court's judgment.


                    GUADALUPE RIVERA, Justice

March 17, 2010

Before Chew, C.J., McClure, and Rivera, JJ.

10